**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLAN HO, | |
| Plaintiff, | CIVIL ACTION NO. 3:21-CV-00831 |
| v. | |
| | (MEHALCHICK, M.J.) |
| INTEGON NATIONAL INSURANCE COMPANY, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is a motion to dismiss the second amended complaint (Doc. 23) filed by Defendant Integon National Insurance Company ("Integon"), and a motion to dismiss Counts III and IV of the second amended complaint (Doc. 38) filed by Defendant Bank of America, N.A. ("BANA"), in the instant insurance coverage case. Plaintiff Allan Ho ("Ho") initiated this action by filing a complaint against Integon on March 19, 2021. (Doc. 1-1, at 4). On January 30, 2011, Ho filed a second amended complaint, adding BANA as a new defendant to this suit (collectively, "Defendants"). (Doc. 21). On March 31, 2022, the parties consented to proceed before the undersigned United State Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 34). For the following reasons, the motions shall be GRANTED. (Doc. 23; Doc. 38).

I. **BACKGROUND AND PROCEDURAL HISTORY**

On November 3, 2009, Ho executed a mortgage in favor of BANA securing a loan in the amount of $249,000.00 (the "Mortgage") with the property located at 1389 Middle Road, Stroudsburg, Pennsylvania (the "Property"). (Doc. 21, ¶ 6, 10; Doc. 39, at 3-4). Ho failed to maintain insurance as required pursuant to Paragraph 5 of the Mortgage, so BANA retained

Integon to provide insurance for the Property to protect BANA's interest in the Property (the "Policy"). (Doc. 1-1, at 10-35; Doc. 39-1, at 7). Pursuant to the Mortgage, Ho is responsible for and alleges that he made all premium payments under the Policy. (Doc. 21, ¶ 13). On or about July 20, 2020, while the Policy was in full force and effect, the Property sustained wind damage and Ho allegedly suffered a total loss and damages of $524,677.39. (Doc. 21, ¶ 21; Doc. 21, at 14-64). When the Property loss occurred, Ho filed a claim with Integon for water damage and began mitigation and restoration efforts., which Integon denied. (Doc. 21, ¶ 17). In response, on March 19, 2021, Ho commenced the instant civil action by filing the complaint in the Court of Common Pleas of Philadelphia, alleging breach of the insurance contract in Count 1 and insurer bad faith in Count II. (Doc. 1, at 1). Ho sought damages in excess of $50,000 for each count and property damage to a total sum in excess of $500,000. (Doc. 1, at 1).

Integon removed the action to the United States District Court for the Eastern District of Pennsylvania on March 31, 2021, pursuant to 28 U.S.C. § 1446(b), based upon the diversity of citizenship of the parties. (Doc. 8, at 1). On April 20, 2021, Integon filed a motion to dismiss for failure to state a claim, which was rendered "moot" by Ho's filing of his amended complaint on May 4, 2021. (Doc. 5; Doc. 7). On April 4, 2021, Ho filed the first amended complaint against Integon, asserting claims for breach of contract and breach of contract as a third-party beneficiary. (Doc. 7). The parties stipulated to transfer venue to the United States for the Middle District of Pennsylvania on May 7, 2021. (Doc. 6; Doc. 8; Doc. 9).

On May 14, 2021, Integon filed a motion to dismiss for failure to state a claim, asserting that Ho is not an intended third-party beneficiary of the Policy and, thus, does not have legal standing to sue under the Policy as the contracting parties did not affirmatively

express the intention to make Ho a third-party beneficiary in the Policy itself. (Doc. 14, at 2). On December 31, 2021, the Court granted Integon's motion to dismiss the amended complaint, holding that Ho was neither an insured nor a third-party beneficiary with legal standing to sue under the Policy. (Doc. 19). The Court dismissed the amended complaint without prejudice and granted Ho leave to file an amended complaint. (Doc. 19; Doc. 20).

On January 30, 2022, Ho filed the second amended complaint, adding Defendant BANA as an additional defendant in this action. (Doc. 21). In Counts I and II, Ho asserts claims for breach of contract and breach of contract as third-party beneficiary, alleging that Integon breached the Policy by refusing to indemnify Ho's property loss as a direct beneficiary or, alternatively, as a third-party beneficiary. (Doc. 21, at 4-5). In Counts III and IV, Ho asserts claims for breach of contract and injunctive relief, alleging that BANA was obligated to file and pursue an insurance claim with Integon on behalf of Ho. (Doc. 21, at 6-7). As relief, Ho demands recovery of $50,000 for each claim, including interest and attorney's fees, and injunctive relief to enjoin BANA to adjust Ho's property damage claim from July 20, 2020. (Doc. 21, at 4-7).

On February 18, 2022, Integon filed the motion to dismiss for failure to state a claim. (Doc. 23). On May 31, 2022, BANA filed the motion to dismiss Counts III and IV for failure to state a claim. (Doc. 38). The motions have been fully briefed and are ripe for review.[1] (Doc. 24; Doc. 30; Doc. 31; Doc. 38; Doc. 39; Doc. 41).

---

[1] On July 29, 2022, BANA filed a motion for leave to file reply brief in support of the motion to dismiss. (Doc. 42). For the reasons set forth in this Memorandum, the Court shall grant BANA's motion to dismiss, dismissing Ho's claims without leave to amend and directing the Clerk of Court to close this action. Accordingly, BANA's motion for leave to file reply brief is DENIED as MOOT. (Doc. 42).

- 3 -

II.   **LEGAL STANDARDS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347. The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

III. **DISCUSSION**

A. INTEGON'S MOTION TO DISMISS

Integon advances four grounds for dismissal pursuant to Rule 12(b)(6). (Doc. 23; Doc. 24; Doc. 31). First, Integon asserts that the second amended complaint fails to assert additional support for Ho's claims that he is a direct insured or third-party beneficiary of the Policy and that Ho does not have legal standing to sue under the policy. (Doc. 24, at 8).

Second, Integon contends that Ho's omission of the insurance policy as an exhibit warrants dismissal of this suit because "there is now no evidence of an insurance contract at all." (Doc. 24, at 11). Next, Integon argues that the second amendment should be stricken or dismissed as to BANA because Ho did not request leave to add a new defendant. (Doc. 24, at 12). Lastly, Integon restates its previous legal arguments that Ho's claims should be dismissed because Ho is neither an insured nor an intended third-party beneficiary of the Policy. (Doc. 24, at 14).

### 1. Ho does not have standing to sue Integon under the Policy.

In the motion to dismiss, Integon submits that the Court has already determined that Ho does not have legal standing to sue under the Policy because Ho is neither a direct insured nor an intended third-party beneficiary of the Policy. (Doc. 23, at 4). Specifically, Integon states:

> Although [Ho] is a potential loss payee under the force-placed property insurance policy purchased by his lender, and thus a potential incidental beneficiary of that contract, he does not qualify as an intended beneficiary with legal standing to sue under Pennsylvania law because the contracting parties did not affirmatively express with intention in the contract itself. Neither the mere ownership of property by a third party, nor mere awareness by the parties to an insurance contract that a third party might benefit from an insurance policy provision is sufficient to render that party an intended beneficiary with standing to enforce the policy.

(Doc. 24, at 5-6).

In response, Ho contends that he does have standing as a direct and intended beneficiary under the Policy, relying on the mortgagee's partial interest in the Property and the fact that Ho is the homeowner with the greatest interest in the Property. (Doc. 30, at 19-21). Additionally, Ho asserts that while he does have legal standing, Integon is nevertheless estopped from avoiding liability because "Integon induced [Ho] by its actions and inactions to believe he had authority to bring a claim under the Policy." (Doc. 30, at 13).

While this is a breach of contract claim involving alleged non-performance of a contractual duty, the crux of the dispute is one of contract interpretation, as a resolution of the issues presented requires an examination of the terms of the Policy. Under Pennsylvania law, "the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999). The Supreme Court of Pennsylvania has instructed that "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (1983) (citations omitted). "In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement." *Stevens Painton Corp. v. First State Ins. Co.*, 746 A.2d 649, 657 (Pa. Super. Ct. 2000). Moreover, "[c]ourts interpret coverage clauses broadly 'to afford the greatest possible protection to the insured,' and, accordingly, they interpret exceptions to an insurer's general liability narrowly against the insurer." *Verticalnet, Inc. v. U.S. Specialty Ins. Co.*, 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (quoting *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498 n.7 (3d Cir. 2002)). The "insurance policy must be read as a whole and construed according to the plain meaning of its terms." *C.H. Heist Caribe Corp. v. Am. Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981). Furthermore, the court must enforce the plain language of the policy if its terms are clear and unambiguous. *Standard Venetian Blind*, 469 A.2d at 566 (citation omitted).

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr.*

*Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999) (citation omitted). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' " *Madison Constr. Co.*, 735 A.2d at 106 (quoting *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (1986)); *see also United States v. Pantelidis*, 335 F.3d 226, 235 (3d Cir. 2003) ("A contract is ambiguous 'where the contract is susceptible of more than one meaning,' or 'if it is subject to reasonable alternative interpretations.' " (first quoting *Sumitomo Mach. Corp. of Am. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996); then quoting *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991))). A court should not, "however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Constr. Co.*, 735 A.2d at 106 (citing *Steuart v. McChesney,* 444 A.2d 659, 663 (1982)). Rather, policy provisions should be read "to avoid ambiguities if possible and [a court] should not torture the language to create them." *Spezialetti v. Pac. Emps. Ins. Co.*, 759 F.2d 1139, 1142 (3d Cir. 1985). "The burden of proving that a particular claim falls within the coverage of a policy is on the insured." *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 376 (3d Cir. 2001) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (1987)).

### a. Integon is not estopped from arguing that Ho does not have legal standing under the Policy.

In opposition to the motion to dismiss, Ho argues that Integon should be estopped from arguing that Ho does not have legal standing under the Policy "[d]ue to the fact that Integon acknowledged that [Ho] was authorized to submit a claim pursuant to his Policy, it would be inequitable for this Court to dismiss his claim against Integon in the basis that he did not have standing to bring this action." (Doc. 30, at 12). Ho contends that Integon induced him "by its actions and inactions to believe he had authority to bring a claim under the

Policy."[2] (Doc. 30, at 13-14). In response, Integon argues that Ho's equitable estoppel theory fails because Ho has not pleaded facts essential to support such a claim and that Ho cannot invoke equitable estoppel against an insurer as a matter of law. (Doc. 31, at 5). Further, Integon argues that Ho does not state a claim for promissory estoppel because there is no assertion or evidence that Integon made a promise, Ho actually took action in reliance on the promise, and injustice could only have been avoided by enforcing the promise. (Doc. 31, at 5-6).

"Under Pennsylvania law, equitable estoppel consists of three elements: '1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel.' " *Wayne Moving & Storage of New Jersey, Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 155 (3d Cir. 2010) (quoting *Chester Extended Care Ctr. v. Pennsylvania Dep't of Pub. Welfare*, 586 A.2d 379, 382 (1991)). Here, Ho has not pled facts to establish any of the three required elements of equitable estoppel. A review of the second amended complaint and exhibits attached thereto does not present evidence of misleading words, conduct, or silence by Integon or BANA. (Doc. 21). In addition, the clear and explicit language of the Policy, which only describes Ho as the

---

[2] To support his assertion, Ho relies on a sworn affidavit by Joseph Owen ("Mr. Owen"), a public adjuster who corresponded with Integon about Ho's claim. (Doc. 30, at 13-14; Doc. 30-1, at 131-32). In response, Integon avers that the Court cannot properly consider the testimonial affidavit from Mr. Owen because it was not included as an exhibit to the second amended complaint. (Doc. 31, at 3). The Court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, and indisputably authentic documents. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006). Because Mr. Owen's affidavit is not attached to the complaint, a matter of public record, or an indisputably authentic document, the Court will not consider the affidavit in its analysis.

"Borrower" and "Homeowner" and states that the Policy is only for the benefit of BANA, indicates that Ho was on notice that the Policy does not cover his interest in the Property. As a result, Ho cannot assert equitable estoppel against Integon. *See Wayne Moving & Storage of New Jersey, Inc.*, 625 F.3d at 155.

In addition, Ho cannot assert promissory estoppel against Integon. Promissory estoppel is an equitable remedy traditionally used to enforce a promise in the absence of bargained-for consideration. *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 100 (3d Cir. 2016). Promissory estoppel is appropriate where "(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot–Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). Under Pennsylvania law, "an enforceable contract between two parties precludes relief for a claim of promissory estoppel." *ISObunkers, L.L.C. v. Easton Coach Co.,* 2010 WL 547518 *1, *4 (E.D. Pa. Feb. 9, 2010); *see also Carlson*, 918 F.2d at 416 ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."). Ho acknowledges the existence of the insurance contract—namely the Policy—between itself, Integon, and BANA, and does not affirmatively challenge the contract's validity. On the contrary, Ho explicitly moves for this Court to enforce the terms of the Policy to recover for his loss. (Doc. 30, at 7). As Ho does not contest the validity of the Policy at issue, this Court must dismiss Ho's claim for promissory estoppel as a matter of law. *See, Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 266 n. 19 (E.D. Pa. 2007) ("A finding of a valid contract would prevent a party from recovering for either [promissory estoppel or unjust enrichment].") (citation omitted).

- 10 -

### b. Ho is neither a direct insured nor an intended third-party beneficiary.

In the motion to dismiss, Integon argues that Ho does not have legal standing because he is neither a direct insured nor an intended third-party beneficiary under the Policy. (Doc. 24, at 14). In response, Ho asserts that the express terms of the Policy indicate that he is a direct beneficiary or, alternatively, an intended third-party beneficiary with a valid breach of contract claim against Integon. (Doc. 30, at 18-20). Unless Ho is a direct insured or third-party beneficiary under the Policy, he does not have legal standing to sue under the insurance contract. *Burks v. Federal Ins. Co.*, 883 A.2d 1086, 1087 (Pa. Super. Ct. 2005).

The Policy is an insurance contract commonly known as a "force-placed" policy, issued to a bank or mortgage company to ensure that its interests are protected when a borrower fails to maintain such coverage himself, or to provide his lender with documentation that he has done so. (Doc. 30, at 7). In the Notice of Insurance, the Policy lists BANA as the "Named Insured Mortgagee," Integon as the "Lender," and Ho as the "Borrower." (Doc. 23-3, at 2). The first page of the Policy includes a "Notice to Borrower" disclaimer that states: "This policy may not fully protect your interest in the property listed. This policy does not provide personal property coverage or liability coverage, unless indicated above." (Doc. 23-3, at 2). The Policy provides: "Subject to the terms and provisions of this Policy, it is agreed that the insurance applies to the property described above and to any person shown as a Borrower with respect to such property." (Doc. 23-3, at 2). Further, the Policy states that "[l]oss, if any, shall be adjusted with and payable to the above Named Insured Mortgage and the Borrower as their interest may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Borrower, at the company's option." (Doc. 23-3, at 2).

The "Definitions" section defines "Borrower" unambiguously as meaning "the person(s) or entity identified as the borrower on the Notice of Insurance." (Doc. 23-3, at 4). The Dwelling Hazard Coverage Form section defines "you" and "your" as referring to the "Named Insured Mortgagee" and the "Additional Named Insured" shown in the Declarations. (Doc. 23-3, at 21). Further, "we," "us" and "our" are defined to refer to Integon as "the Company providing this insurance." (Doc. 23-3, at 21). However, the Policy does not expressly state that the Dwelling Hazard Coverage Form section definitions shall be used throughout the insurance contract nor does the insurance contract define or identify an "Additional Named Insured" party. (Doc. 23-3, at 2). Moreover, the insurance contract does not define or identify Ho as anything other than the "Borrower" and the "Homeowner." (Doc. 23-3, at 2, 16).

Finally, the Policy states that in the case of loss to the Property, BANA must give prompt notice to Integon, protect the Property from further damage, make reasonable and necessary repairs, keep an accurate report of such repair expenses, and provide Integon with sworn proof of loss. (Doc. 23-3, at 25). The "Mortgage Clause" of the Policy states:

> The policy to which this endorsement is attached is issued to the Named Insured Mortgagee and the Borrower. In order to protect the Named Insured Mortgagee, and any other mortgagee(s) that may be named on the policy to which this endorsement is attached, the following additional conditions apply:
>
> 2. Any loss payable under this policy will be paid to the mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear.
>
> (Doc. 23-3, at 5).

Here, the Court finds that Ho does not have legal standing to recover under the insurance contract against Integon. First, by the express terms of the Policy, Ho is not a direct insured of the insurance contract between BANA and Integon. (Doc. 23-3, at 2). The Policy

does not name or identify Ho as anything other than "Borrower" and "Homeowner." (Doc. 23-3, at 2). Further, the Policy does not grant Ho, as the Borrower, the authority to replace BANA or fulfill its duties in the event of property loss. Thus, Ho does not have standing to bring this breach of contract claim against Integon because he is not a direct beneficiary of the Policy. *See Richard v. Fin. of Am. Mortgs., LLC*, No. 3:18-CV-559, 2019 WL 1980693, at *5 (M.D. Pa. May 3, 2019) (granting a motion to dismiss a breach of contract claim because the insurance policy did not list plaintiff as an insured).

Second, Ho does not have legal standing to sue under the Policy because he is not an intended third-party beneficiary. The Pennsylvania Supreme Court has adopted the Restatement (Second) of Contracts § 302 which allows for third-party intended beneficiaries to sue for breach of contract "even though the actual parties to the contract did not express an intent to benefit the third party." *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 168 (3d Cir. 2008). Under this approach, a two-part test must be satisfied: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.,* 39 F. Supp. 2d 517, 535 (M.D. Pa. 1999) (citing *Scarpitti v. Weborg,* 609 A.2d 147, 150 (1992)).

The first element of the test establishes "a standing requirement which leaves discretion with the court to determine whether recognition of third party beneficiary status would be appropriate." *Scarpitti,* 609 A.2d at 150 (quoting *Guy v. Liederbach,* 459 A.2d 744, 751 (1983)). The first element dictates whether an individual is a third-party beneficiary, and

- 13 -

is a question of law for the Court's determination. *Scarpitti,* 609 A.2d at 150 (quoting *Guy*, 459 A.2d at 751); *Williams Controls,* 39 F. Supp. 2d at 535. The second element "defines the two types of claimants who may be intended as third-party beneficiaries," differentiating between intended third-party beneficiaries, who have rights under Section 302, and incidental third-party beneficiaries, who do not have rights under Section 302. *Scarpitti,* 609 A.2d at 150 (quoting *Guy*, 459 A.2d at 751); *Williams Controls,* 39 F.Supp.2d at 535. A claim may be asserted under the contract if the party satisfied both parts of the test. *Scarpitti,* 609 A.2d at 150. Thus, the Court must examine whether the circumstances indicate that Integon and BANA intended to confer benefits on Ho under the Policy. *See Williams Controls*, 39 F.Supp.2d at 535.

Applying these legal guidelines to this case, and to Ho's allegations and the documents he relies upon to claim third-party beneficiary status, the Court finds that Ho does not satisfy the standards required to be considered a third-party beneficiary under the Policy. At the onset, the Policy's language makes clear that it was only intended to ensure BANA's mortgage interest in the Property. (Doc. 23-3, at 2). The Notice of Insurance unambiguously identifies BANA as the only Named Insured Mortgagee and Ho as the only Borrower under the Policy. (Doc. 23-3, at 2, 22-23). The Dwelling Hazard Coverage Form provides that the terms "you" and "your" in that section refer to BANA, as the "Named Insured Mortgagee," and an unnamed "Additional Named Insured."[3] (Doc. 23-3, at 21). Nothing in the insurance contract or exhibits that Ho attached to his complaint indicates or suggests a mutual intention by the parties that Ho would be a beneficiary under the Policy. *See Burks*, 883 A.2d at 1088.

---

[3] The Dwelling Hazard Coverage Form section does not state whether the definitions for "you" and "your" apply throughout the insurance contract, so the Court will not make such an assumption. (Doc. 23-3, at 21).

Furthermore, the Notice of Insurance specifically warned Ho that the Policy may not fully protect his personal interest. (Doc. 23-3, at 2). Integon concedes that under the Policy, "loss shall be adjusted with and payable to the Named Insured Mortgagee (Bank of America) and the Borrower ([Ho]) '*as their interest may appear*.' " (Doc. 24, at 16) (emphasis in original). However, Integon explains, and the Court agrees, that while this language may suggest that Ho was potentially an incidental beneficiary of the insurance policy as a "loss payee," it does not express an intention that Ho be afforded legal standing to enforce the terms of the Policy. (Doc. 24, at 16).

Ho has alleged no facts from which the Court may infer that Integon or BANA intended for him to benefit from the dwelling provisions of the Policy. *See Richard*, 2019 WL 1980693, at *1; *Weiser v. Great Am. Ins. Co.*, 453 F.Supp.3d 711, 716-17 (E.D. Pa. 2020); *see also Kirschner v. K & L Gates LLP*, 46 A.3d 737, 762 (Pa. Super. Ct. 2012) (explaining that even under this test, the party seeking status as a third-party beneficiary "must show that both parties to the contract so intended and that such intent was within the parties' contemplation at the time the contract was formed") (quotation marks omitted). Based on the text of the Policy, Ho is neither an insured under those provisions nor a third-party beneficiary. (Doc. 23-3, at 2). At most, Ho is an incidental beneficiary of the Policy because he merely acted as BANA's agent in submitting the claims to Integon and Ho is only described as the "Borrower" under the contract. (Doc. 23-3, at 2). While an intended insured or third-party beneficiary acquires enforceable legal rights under a contract, an incidental beneficiary does not. *See Richard*, 2019 WL 1980693, at *6; *Scarpitti,* 609 A.2d at 150.

Therefore, Ho does not have legal standing to bring his insurance contract-related claims against Integon under the Policy. *See Richard*, 2019 WL 1980693, at *9; *Kirschner, 46*

A.3d at 762. Accordingly, Ho's claims against Integon are dismissed without prejudice.

### 2. Remaining Arguments

Because Ho's complaint fails to state a claim for relief against Integon under Rule 12(b)(6), the Court declines to assess Integon's remaining arguments, including those concerning Ho's claims against BANA. (Doc. 23, at 5).

B. BANA's Motion to Dismiss

Seeking to dismiss Counts III and IV of the second amended complaint, BANA contends that Ho has added BANA solely in an attempt to try to obtain standing to sue Integon; however, BANA asserts that it cannot confer standing on Ho because it "has no involvement in the insurance dispute between Ho and Integon, nor is BANA obligated by contract or law to insert itself into this dispute." (Doc. 39, at 2). Specifically, BANA asserts that Count III should be dismissed because Ho's claim for breach of contract fails as a matter of law. (Doc. 39, at 6). Next, BANA argues that Count IV should be dismissed because Ho is not entitled to injunctive relief. (Doc. 39, at 8). In opposition, Ho avers that he has pled a factually plausible claim for breach of contract against BANA and that he will not be able to recover in this action unless BANA is enjoined by the Court. (Doc. 41, at 2, 5).

### 1. Count III fails to state a claim upon which relief may be granted.

BANA seeks dismissal of Count III of the second amended complaint, arguing that Ho's breach of contract claim fails as a matter of law because Ho "fails to point to any contractual provision or statute" requiring BANA to bring an insurance claim on Ho's behalf and to pursue a lawsuit when Integon denied his claim. (Doc. 39, at 6). In opposition, Ho asserts that he has sufficiently pled a claim for breach of contract against BANA under Pennsylvania law. (Doc. 41, at 6).

Here, Ho's breach of contract claim consists of legal conclusions couched as factual allegations and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal,* 556 U.S. at 678. In Count III of the second amended complaint, Ho asserts a breach of contract claim against BANA. (Doc. 1, at 6). Ho avers that "[BANA] as the Named Insured Mortgagee was under a duty to report the claim for damage arising from the 7/20/2020 storm to Integon," and that BANA failed to do so. (Doc. 21, ¶¶ 37-38). Ho asserts "[BANA]'s failure to report and/or adjust the claim was a breach of its contractual duties," and that this breach caused damages and harm to him because "[BANA]'s breach leaves [Ho] without the ability to recover the proceeds it is rightfully owed under the Integon Policy, and for which [Ho] pays a premium for." (Doc. 21, ¶¶ 39-41). Ho does not identify a contractual provision or statute in support of this allegation. As relief, Ho demands judgment against BANA in an amount in excess of $50,000, together with interest and attorneys' fees. (Doc. 21, at 6).

To maintain a cause of action for breach of contract under Pennsylvania law, a plaintiff must allege: " '(i) the existence of an agreement, including its essential terms; (ii) a breach of a duty imposed by that agreement; and (iii) damages resulting from the breach.' " *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). In Pennsylvania, certain courts have also required that a plaintiff show it "complied with the contract's terms." *Levin v. Strayer Univ., LLC*, 2018 WL 3585124, at *3 (E.D. Pa. July 26, 2018) (citing *Nowosad v. Villanova Univ.*, 1999 WL 322486, at *6 (E.D. Pa. May 19, 1999)). At the motion to dismiss stage, the Court must determine whether Ho has asserted "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As noted *supra*, it is well established that the intent of the parties to a written agreement is to be ascertained in the first instance from the writing itself, and where the words contained in the written instrument are clear and unambiguous, the intent as reflected in the expressed language chosen by the parties must be given effect. *Martin v. Monumental Ins. Co.,* 240 F.3d 223, 232–33 (3d Cir.2001). "[T]he focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Steuart*, 444 A.2d at 661. Ascertaining the intent of the parties is a question of law under such circumstances. *Seven Springs Farm, Inc. v. Croker,* 801 A.2d 1212, 1216 (Pa.2002) (quoting *Cmty. Coll. of Beaver Cty. v. Cmty. Coll. of Beaver,* 375 A.2d 1267, 1275 (Pa.1977)); *Restatement (Second) of Contracts § 212* Comment d. In contrast, when the language chosen by the parties is ambiguous, deciding the intent of the parties becomes a question of fact for a jury. *Community College of Beaver County,* 801 A.2d at 1275; *Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1424 (3d Cir.1994).

First, the Court finds that Ho sufficiently alleges the existence of a contract by stating BANA is the Named Insured Mortgagee under the Policy. (Doc. 21, ¶ 37). However, BANA contends that the Mortgage is the relevant contract between BANA, the Lender, and Ho, the Borrower. (Doc. 39, at 7). The Court agrees with BANA because, as discussed *supra*, the Court finds that Ho is neither a direct insured nor a third-party beneficiary under the Policy. Conversely, Ho executed the Mortgage in favor of BANA to secure a loan with the Property

and BANA is the current investor and servicer of that loan. (Doc. 21, ¶¶ 10-12; Doc. 39-1, at 2). Thus, the Mortgage is the relevant contract to analyze Ho's claims against BANA.[4]

However, the Court finds that Ho fails to sufficiently allege that BANA breached a duty imposed upon it by the Mortgage. In the complaint, Ho alleges "[BANA] as the Named Insured Mortgagee was under a duty to report the claim for damage arising from the 7/20/200 storm to Integon." (Doc. 21, ¶ 37). Ho asserts that "[BANA]'s failure to report and/or adjust the claim was a breach of its contractual duties." (Doc. 21, ¶ 39).

The Mortgage states: "Borrow shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance." (Doc. 39-1, at 7). Paragraph 5 of the Mortgage provides:

> If Borrower fails to maintain any of the coverages described above, Lender *may* obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage *shall cover Lender, but might or might not protect Borrower*, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. . . .

(Doc. 39-1, at 7) (emphasis added).

---

[4] Although the Mortgage is not attached to the second amended complaint, the Court takes judicial notice of the Mortgage as it is a public record. *See, e.g., Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."). The Mortgage was recorded in the Monroe County land records on January 11, 2010, at Doc ID 000210293181110009. (Doc. 39, at 4 n.4). A copy of the Mortgage is attached to BANA's brief in support of the motion to dismiss. (Doc. 39-1, at 2-18).

Thus, the Mortgage unambiguously required Ho, as the Borrower, to place hazard insurance on the Property, and permitted BANA, as the Lender, to obtain insurance coverage if Ho failed to satisfy this obligation. (Doc. 39-1, at 7).

In opposition to BANA's motion to dismiss, Ho "seeks to hold BANA accountable as the 'named insured' on the Policy," because the Mortgage and the "force-placed insurance Policy BANA purchased from Integon, at [Ho]'s expense."[5] (Doc. 41, at 8). However, the Mortgage unambiguously states that if Ho fails to maintain the required insurance coverage, BANA *may* obtain such insurance coverage "at [BANA]'s option and [Ho]'s expense," and that any insurance coverage BANA purchases therein "shall cover [BANA], but *might or might not* protect [Ho], [Ho]'s equity in the Property, or the contents of the Property, against any risk, hazard, or liability . . . ." (Doc. 39-1, at 7) (emphasis added). Ho failed to obtain such insurance on the Property and BANA, appropriately, obtained a force-placed insurance policy to protect its interest in accordance with the terms of the Mortgage at Ho's expense. (Doc. 21, ¶¶ 6-10). When the property damage occurred, Ho filed a claim with the insurer, Integon, which Integon then denied. (Doc. 21, ¶ 17). Indeed, Ho admits that nothing in the Mortgage

---

[5] Ho contends that the Policy and the Mortgage are "adhesion contracts," "which should be seen in favor of [Ho]." (Doc. 41, at 7). This is a new theory of liability and cause of action that was not raised in the second amended complaint. (Doc. 21). A complaint is not amended by the arguments proffered in a brief in opposition to a motion to dismiss. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir.1988) ('[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984))). At the motion to dismiss stage, the court must look to the allegations contained in the complaint and determine whether the plaintiff has stated a plausible claim for relief. *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly,* 550 U.S. at 556). Therefore, the Court declines to address Ho's argument that the Policy and the Mortgage are adhesion contracts. The Court accepts as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to Ho. *Jordan,* 20 F.3d at 1261.

suggests that BANA owes Ho a duty under the Policy to file a claim on behalf of Ho or to defend a claim if there was damage to or total loss of the Property. (Doc. 41, at 6).

Ho asserts that "while the mortgage agreement does not place BANA under any obligation to obtain insurance coverage, BANA ultimately retained Integon to protect its interest in the Property, placing a duty on BANA." (Doc. 41, at 6). However, Ho does not identify a provision, nor does any such provision exist in the Mortgage, to support the argument that by executing the Policy with Integon, a duty was placed on BANA to report a claim on Ho's behalf. Moreover, the Mortgage provides that "[i]n the event of loss, [Ho] shall give prompt notice to the insurance carrier and [BANA]. [BANA] *may* make proof of loss if not made promptly by [Ho]." (Doc. 39-1, at 7) (emphasis added). Based on the language of the Mortgage, the Court finds that BANA did not have a duty or obligation to give prompt notice to Integon when the property damage occurred and BANA did not have an obligation to being a claim on Ho's behalf. As it related to this insurance dispute, BANA's only involvement is that of the Mortgage, which the Court has determined does not impose a duty or obligation upon BANA to report and/or adjust Ho's insurance claim with Integon. Therefore, Ho's breach of contract claim fails because he has not alleged that BANA breached a duty imposed by the Mortgage. *Fortunato*, 2018 WL 4635963, at *3.

Accordingly, Count III of Ho's complaint is dismissed for failure to state a claim.

### 2.  Count IV fails to state a claim upon which relief may be granted.

BANA seeks dismissal of Count IV "because [Ho]'s breach of contract claim fails and he has not asserted any other viable claims for relief, he cannot show a likelihood of prevailing on the merits to warrant injunctive relief." (Doc. 39, at 9). In opposition, Ho argues that injunctive relief if necessary because "the failure and refusal on behalf of BANA leave [Ho]

without the ability to recover the funds sue and owed under the Policy which [Ho] needs to make necessary repairs."[6] (Doc. 41, at 9).

In Count VII, Ho requests that the Court "enjoin [BANA] to adjust the 7/20/2020 claim." (Doc. 21, at 7). Ho avers "[u]nless enjoined by this Court, [BANA] will continue its failure to report and/or adjust the 7/20/2020 claim." (Doc. 21, ¶ 43). Ho claims "[s]aid failure and refusal on behalf of [BANA] leaves [Ho] without the ability to recover the funds due and owed under the Policy and upon which [Ho] needs to make necessary repairs to the Property." (Doc. 21, ¶ 44). Lastly, Ho states that "[n]o adequate remedy exists at law for the injuries alleged herein, and [Ho] will suffer great and irreparable injury if [BANA]'s conduct is not immediately enjoined and restrained." (Doc. 21, ¶ 45).

At the onset, Count IV must be dismissed because Ho may seek an injunction as a remedy, not as an independent cause of action. *Davis v. Corizon Health, Inc.*, No. 14-CV-1490, 2014 WL 5343617 at *2 (E.D. Pa. Oct. 20, 2014); *see Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311 (1982); *In re Shop–Vac Mktg. & Sales Practices Litig.,* 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) ("[I]njunctive relief is a remedy, not an independent cause of action."). If Ho desires a preliminary injunction, he must file a motion pursuant to Federal Rule of Civil Procedure 65 adducing enough information from which the court can balance the hardships on the parties. *See Am. Exp. Travel Related Servs., Inc. v. Sidamon–Eristoff,* 669 F.3d 359, 366 (3d Cir.

---

[6] Ho emphasizes that the Policy "was ultimately paid for by [Ho] through payments to BANA and the policy insured $407,899.95 of [Ho]'s interest in the property. In other words, over 90% of all benefits from the policy were intended to protect [Ho]'s interest, not BANA's." (Doc. 41, at 9). Ho does not provide any evidence or case law to support this allegation and the complaint does not proffer such an assertion. As discussed *supra*, the Court finds that Ho is neither an insured nor a third-party beneficiary, under the Policy. (Doc. 23-3, at 2). Therefore, the Court is not persuaded by Ho's argument that the Policy was intended to benefits Ho's interest in the Property, not BANA's.

2012) (citing *Crissman v. Dover Downs Entm't Inc.*, 239 F.3d 357, 364 (3d Cir.2001). ("A court must consider four factors when ruling on a motion for preliminary injunction: '(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.' ").

In any event, Ho has not pleaded a cause of action against BANA warranting injunctive relief. The grant of equitable relief by this Court is an extraordinary remedy, and the Third Circuit has explained that:

> The decision to issue a preliminary injunction is governed by a four-factor test . . . . The plaintiff must show: 1) likelihood of success on the merits; 2) that he is likely to suffer irreparable harm; 3) that denying relief would injure the plaintiff more than an injunction would harm the defendant; and 4) that granting relief would serve the public interest.
>
> *Del. Strong Families v. Attorney Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015); *see Winter v. Natural Resource Defense Council, Inc.,* 555 US 7, 20 (2008).

"Pennsylvania law provides that in order to establish the right to injunctive relief, a plaintiff must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Boring v. Google Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010). The standard for preliminary and permanent injunctions is substantially the same. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

Here, Ho's request for injunctive relief fails on all scores. First, Ho has not shown a likelihood of success on the merits because the complaint fails to state a *prima facie* claim against BANA for breach of contract and Ho does not assert another claim against BANA for relief. *See supra*; *see also Am. Exp. Travel Related Servs.*, 669 F.3d at 366 (citing *In re Arthur*

*Treacher's Franchisee Litig.,* 689 F.2d 1137, 1143 (3d Cir.1982)) ("The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'"). Second, there is no showing that damages as a latter of law would not be adequate as a remedy in this case in the event that Ho was able to state a claim upon which relief may be granted. Ho has not filed any relevant affidavit or verified pleading showing that he is likely to suffer immediate and irreparable injury, loss, or damage in the absence of an injunction. *See* Fed. R. Civ. P. 65(b). Ho avers that "[n]o adequate remedy exists at law for the injuries alleged herein," and that he "will suffer great and irreparable injury if [BANA]'s conduct is not immediately enjoined and restrained." (Doc. 21, ¶ 45). These allegations are too ill-defined and speculative to meet the injunctive standard even at this pleadings stage, and "loss of money" is generally insufficient to merit a preliminary injunction because "monetary damages . . . are capable of ascertainment and award at final judgment . . . ." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989); *see Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484 (3d Cir. 2000) ("A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require"). Further, entering an injunction which, in effect, compels BANA to seek an insurance claim on behalf of Ho and forego BANA's legal rights under the Mortgage and Policy agreements would plainly work a severe and unjustified hardship upon BANA. *See Angino v. BB&T Bank*, No. 1:15-CV-2105, 2016 WL 4408835, at *15 (M.D. Pa. June 7, 2016), *report and recommendation adopted sub nom.*, 2016 WL 4366962 (M.D. Pa. Aug. 16, 2016) (denying injunctive relief because it would force bank to forego its legal rights under its loan modification agreements). Finally, Ho failed to allege any facts regarding the public

interest in this case. In sum, Ho's claim for injunctive relief fails to satisfy any of the elements required by law for this extraordinary relief. *See Del. Strong Families*, 793 F.3d at 308.

Accordingly, Ho's claim for an injunction under Count IV is dismissed.

## IV.   LEAVE TO FILE A THIRD AMENDED COMPLAINT

Ho requests that the Court grant him leave to file a third amended complaint if it finds that the second amended complaint fails to state a claim upon which relief can be granted. (Doc. 30, at 5; Doc. 41, at 10). The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. However, the Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). A complaint may be dismissed without leave to amend when it is "clear from the face of the complaint that the deficiencies cannot be cured." *Turner v. Spaley*, 501 F. App'x 101, 102 n.1 (3d Cir. 2012).

In this case, amendment of Ho's claims against Integon would be futile because Ho is unable to establish legal standing to sue under the Policy. *See Phillips*, 515 F.3d at 245; *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Dismissing Ho's claims against Integon in the amended complaint, the Court found that Ho failed to establish legal standing to sue under the Policy and granted him leave to file a second amended complaint to correct these deficiencies. (Doc. 19, at 13; Doc. 20). Given the Court's understanding of the factual basis

- 25 -

for Ho's claims against Integon, granting further leave to amend would be futile. *See Phillips,* *515 F.3d at 245.*

In addition, amendment of Ho's claims against BANA would be futile. Ho has failed to state any plausible claims for breach of contract and injunctive relief is an improper independent cause of action. For the reasons given above, the Court finds that it is "clear from the face of the complaint that the deficiencies cannot be cured." *Turner,* 501 F. App'x at 102 n.1. The Mortgage unambiguously provides that BANA justifiably executed the Policy with Integon to protect its interest in and Property, and that BANA does not owe a duty to Ho to report and/or adjust a claim to Integon on Ho's behalf. No plausible facts in the second amended complaint show that any other defendant engaged in the wrongdoing asserted. Therefore, given the Court's understanding of the factual basis for Ho's claims against BANA, granting further leave to amend would be futile. *See Phillips,* 515 F.3d at 245.

V.    **CONCLUSION**

For the foregoing reasons, Integon's motion to dismiss (Doc. 23) and BANA's motion to dismiss (Doc. 38) are **GRANTED**, and all of Ho's claims are **DISMISSED** without further leave to amend. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.


**BY THE COURT:**

Dated: August 3, 2022                *s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **Chief United States Magistrate Judge**